File Date: October 24, 2022
Case Number: 22-cr-484
Judge Gary R. Brown
Magistrate Judge Steven I. Locke

DMP:RTP/ICR/MMA
F. #2017R00137

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

SHERRY XUE LI,
LIANBO WANG,
also known as "Mike Wang," and
GUO XUEFENG,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. ______________________
(T. 18, U.S.C., §§ 371, 981(a)(1)(C), 982(a)(1), 982(b)(1), 1343, 1349, 1956(h), 1957(a), 1957(b), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c); T. 26, U.S.C., §§ 7201 and 7206)

THE GRAND JURY CHARGES:

INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I. The Defendants and Relevant Entities

1. The defendant SHERRY XUE LI was a naturalized United States citizen, who resided at her residence located in Oyster Bay, New York (the "Oyster Bay Residence"). LI was the President of "Thompson Education Center" or "TEC," a fictitious project to develop, construct and operate a private international education center in Sullivan County, New York (the "TEC Project").

2. The defendant LIANBO WANG, also known as "Mike Wang," was the marketing director and general manager of TEC. WANG was a naturalized United States citizen, who resided in Long Island, New York.

3. The defendant GUO XUEFENG was the director of TEC's Beijing office in the People's Republic of China ("PRC"). XUEFENG was a citizen of, and resided in, the PRC.

A. The EB-5 Program

4. The EB-5 Visa Program (the "EB-5 Program") was created by Congress in 1990 to stimulate the United States economy through job creation and capital investment by foreign investors. Under the EB-5 Program, which was administered by the United States Citizenship and Immigration Services ("USCIS"), foreign nationals were eligible to petition USCIS to become lawful permanent residents of the United States when they showed they had (a) invested $500,000 in a high unemployment or rural area, (b) in a new commercial enterprise, (c) that carried a risk of loss, and (d) created at least 10 full-time jobs for U.S. workers.

5. Projects seeking to solicit EB-5 Program investors often promoted not only the potential financial return, but also the path the EB-5 Program provided for such investors to obtain the prospective immigration benefit of lawful permanent resident status. Individuals or entities seeking to solicit EB-5 Program investors were prohibited from guaranteeing, whether explicitly or implicitly, that investors would be granted lawful permanent resident status. Further, investors' capital had to remain "at risk" throughout the duration of the project for the investors to be eligible for any immigration benefit. To the extent that investors were promised or guaranteed a return on their investments, the project would not fall within the scope of the EB-5 Program and the investors would not be eligible for any immigration benefits.

6. After making the $500,000 investment, a foreign investor could petition USCIS for conditional lawful permanent resident status (often referred to as a "temporary green card"), which was valid for two years. As part of the initial petition for a temporary green card,

the investor was required to submit an EB-5 economic report that outlined how many jobs the investment was projected to create and whether those jobs were direct or indirect. The primary mechanism for an EB-5 investor to apply to USCIS for a temporary green card through the EB-5 investment process was the I-526 Immigrant Petition by Alien Entrepreneur form, through which the investor demonstrated that he or she was in the process of investing or had already invested the requisite amount of capital in a suitable EB-5 project.

7. At the end of the two-year conditional period, the EB-5 Program investor could request that USCIS issue a permanent green card. In determining whether to grant the request for a permanent green card, USCIS assessed, among other things, whether the project would be sufficient to create the required number of jobs.

B. The Federal Election Campaign Act

8. In enacting the Federal Election Campaign Act of 1971, as amended, Title 52, United States Code, Sections 30101, et seq. ("FECA") (formerly Title 2, United States Code, Sections 431, et seq., Congress prohibited certain financial influences on the election of candidates for federal office, including the Office of the President of the United States of America.

9. To prevent the influence of foreign nationals on federal elections, FECA prohibited foreign nationals, directly or indirectly, from making any contributions or independent expenditures in connection with federal elections. Further, to limit the influence that any one person could have on the outcome of a federal election, FECA established limits on the amounts that even United States citizens or lawful permanent residents could contribute to a candidate and the candidate's authorized committee, including joint fundraising committees (which are committees established for the purpose of fundraising for multiple committees at the same time).

10. To prevent individuals from circumventing FECA, and to enable the detection of attempts to circumvent it, FECA prohibited a person from making a political contribution in the name of another person, including giving funds to a "straw" donor for the purpose of having the donor pass the funds on to a federal candidate or to a candidate's federal campaign committee or joint fundraising committee, and using the donor's name as if he or she were making the contribution, rather than the true source of the money.

11. The Federal Election Commission ("FEC") was an agency and department of the United States with jurisdiction to enforce the limits and prohibitions of FECA, in part by requiring candidates and joint fundraising committees to file regular reports of the sources and amounts of the contributions they received. To deter abuses of FECA and thus instill public confidence in the election process against corruption and the appearance of corruption, FECA required the FEC to publish the reports that it received so that all of the candidates, the entire public, and law enforcement could see all the specific information about the amounts and source of political contributions involving federal candidates and registered political committees. Specifically, candidates and political committees were required to make periodic reports to the FEC identifying each person who contributed money or any thing of value by name, occupation, employer and mailing address.

C. The Internal Revenue Service and Its Forms

12. The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury, responsible for administering and enforcing the tax laws of the United States.

13. A U.S. Individual Income Tax Return, Form 1040 ("Form 1040") was an IRS form that individual United States taxpayers used to report their income, gains, losses, deductions and credits, as well as to determine their income tax liability.

II. The Defendants' Investment Fraud Scheme

14. Beginning in or about May 2013, the defendants SHERRY XUE LI, LIANBO WANG and GUO XUEFENG and their co-conspirators solicited investments in the TEC Project from victim investors, including foreign nationals of the PRC desiring to obtain lawful permanent residence in the United States. The defendants and their co-conspirators fraudulently induced investors to contribute capital to the TEC Project and then siphoned off the proceeds of the scheme for their personal benefit through the use of a network of dozens of business entities (the "TEC Entities"). After creating the TEC Entities, LI frequently opened bank accounts in the names of the TEC Entities, which LI, WANG and their co-conspirators used to divert victim-investor funds to pay for personal expenses and to withdraw proceeds of their fraud for personal use.

15. In furtherance of the fraud scheme, the defendants SHERRY XUE LI, LIANBO WANG and GUO XUEFENG and their co-conspirators described the TEC Project to potential investors as a "multi-phase project." The defendants told potential investors that the first phase of the TEC Project would be the construction of two college classroom buildings, two college student activity centers, a sports center, a community center and six student housing buildings, including 132 units of townhouse-style housing, 200 two-bedroom apartments and 50 three-bedroom apartments. LI, WANG and XUEFENG and their co-conspirators told potential investors that the total cost of construction of the first phase of the TEC Project was estimated to be $150 million, and that TEC intended to raise $60 million from 120 EB-5 investors and the

remaining $90 million from other sources, including debt and equity investors, to fund the construction of the project.

16. To effect their scheme, the defendants SHERRY XUE LI, LIANBO WANG and GUO XUEFENG and their co-conspirators made and caused to be made, among others, one or more of the following materially false and misleading representations to investors and potential investors, to USCIS and to others: (1) that EB-5 investors in the TEC Project were guaranteed to receive a green card in return for their investment; (2) that the TEC Project had received the required construction permits and approvals from local governments to build the project and that the TEC Project was already under construction; (3) that TEC was being audited by a major accounting firm and had agreed to partner with a major investment bank to conduct an initial public offering ("IPO") and that TEC would list its stock on the New York Stock Exchange; (4) that TEC had secured partnership agreements with prominent universities to enroll, educate and issue diplomas to students; and (5) that the conspirators' ties to high-ranking elected and government officials assured the TEC Project of political support to attain regulatory approvals.

17. Based, in part, on these misrepresentations, the defendants SHERRY XUE LI, LIANBO WANG and GUO XUEFENG and their co-conspirators raised at least approximately $27 million from more than 150 investors in the TEC Project, including $16.5 million raised from EB-5 investors who were promised a green card in return for their investment, and approximately $11 million from stock investors. No EB-5 investor in the TEC Project received a temporary or permanent green card; to the contrary, beginning in or about March 2017, USCIS began issuing notices of intent to deny ("NOIDs") EB-5 investors' petitions for temporary green cards because USCIS did not find TEC's business plan credible.

18. The defendants SHERRY XUE LI and LIANBO WANG and their co-conspirators siphoned off the money they fraudulently obtained from investors by transferring the funds through bank accounts held in the names of the TEC Entities and other companies that LI had created. Once the funds were in those accounts, LI and WANG used the funds to pay for numerous personal expenses including clothing and accessories, jewelry, housing, vacation travel and upscale dining, and to make political contributions to prominent politicians.

19. For example, in or about August 2010, the defendant SHERRY XUE LI created a company named CPA Express Inc ("CPA Express"). In or about March 2014, LI opened a Sterling Bank business bank account in CPA Express's name for which she was the sole signatory (the "Sterling CPA Express Account"). Between approximately January 2015 and January 2018, LI transferred via check and wire transfer into the Sterling CPA Express Account approximately $316,000 of TEC investor funds from an East West Bank account held in the name of Thompson B. Management (the "EWB TBM Account"), and another bank account that she controlled and held in the name of Thompson B. Management, LLC at Capital One. Once the funds were in the Sterling CPA Express Account, LI withdraw approximately $50,000 in cash, paid approximately $15,000 to a Chase credit card held in the name of a TEC employee, paid approximately $5,000 in payments to an American Express card, and paid approximately $4,300 in mortgage payments on the Oyster Bay Residence.

20. In or about November 2014, the defendant SHERRY XUE LI created a company named CFS Asset Management, Inc. ("CFS Asset Management"). In or about December 2014, LI opened a bank account in CFS Asset Management's name at New York Community Bank (the "CFS Asset Management Account"). LI was the sole member of CFS Asset Management and the sole authorized signatory on the CFS Asset Management Account.

Approximately once a month, LI issued a check in the amount of $15,000 from the EWB TBM Account, which was funded primarily with the funds of TEC Project investors, to her CFS Asset Management Account. In total, between approximately September 2015 through October 2018, LI issued checks totaling approximately $430,000 of TEC Project investor funds from the EWB TBM Account, and deposited the money into the CFS Asset Management Account. LI used much of that money to pay for various personal expenses.

21. In or about June 2015, the defendant SHERRY XUE LI created a company named Fortune Source International, Inc. ("Fortune Source"). In or about May 2016, LI opened a TD business bank account in the name of Fortune Source International for which she was the sole signatory (the "TD Fortune Source Account"). Between approximately May 2016 and July 2018, LI transferred via check and wire transfers approximately $137,000 of TEC Project investor funds from the EWB TBM Account into the TD Fortune Source Account, much of which LI then spent on various personal expenses.

22. The defendants SHERRY XUE LI and LIANBO WANG and their co-conspirators spent at least $2.5 million dollars in investor funds on various personal expenses, none of which was reported as income to the IRS by LI or WANG.

III. The Defendants' Scheme to Obstruct the FEC's Enforcement of FECA

23. As part of their effort to solicit investments by foreign nationals in the TEC Project, the defendants SHERRY XUE LI and LIANBO WANG orchestrated a scheme to make "straw" donations of foreign money to U.S. politicians and political committees. LI and WANG obstructed the enforcement of FECA by causing those politicians and political committees to inaccurately report the true source of the political contributions they received to the FEC. LI and WANG promised foreign nationals access to U.S. political events and

politicians in exchange for money. LI and WANG, in violation of FECA, used the money they received from foreign nationals to fund political contributions purportedly by U.S. citizens, and falsely identified themselves and other U.S. citizens as the contributors of the funds. In some cases, LI and WANG used TEC investors' investment funds to make political contributions to gain access to the political events, where LI and WANG were photographed with elected officials. LI and WANG used the photographs with elected officials to promote the TEC Project, by, among other things, falsely claiming to prospective investors that the elected officials supported the TEC Project.

24. In or about June 2017, the defendant SHERRY XUE LI contributed $270,500 to a joint fundraising committee (the "Joint Fundraising Committee") comprised of the National Committee and a committee supporting the re-election of the President of the United States ("Presidential Candidate Committee"). The contribution was made in LI's name.

25. In June 2017, the defendant LIANBO WANG contributed $329,500 to the Joint Fundraising Committee. The contribution was made in WANG's name.

26. Although the defendants SHERRY XUE LI and LIANBO WANG made the contributions in their own names, the funds to make the contributions did not belong to LI or WANG. In fact, LI and WANG had solicited the funds to make the contributions from 12 foreign nationals who were not citizens or lawful permanent residents of the United States, including 11 citizens of the PRC. By making the contributions in their own names, LI and WANG concealed the fact that the 12 foreign nationals were the true sources of the contributions.

27. In October 2017, as part of their continued effort to solicit investments by foreign nationals in the TEC Project, the defendants SHERRY XUE LI and LIANBO WANG

continued to violate campaign finance laws. Among other things, LI, WANG and others used straw donations in order to illegally contribute foreign-sourced funds to federal and state election campaigns and to provide foreign nationals access to U.S. government officials in exchange for payments from the foreign nationals.

28. In October 2017, the defendant SHERRY XUE LI executed a contract with a PRC national, an individual whose identity is known to the Grand Jury (the "PRC National"), pursuant to which the PRC National agreed to pay LI in exchange for LI arranging for the PRC National and LI to attend two political campaign events in October 2017. Under the agreement, LI arranged for the PRC National to travel to the United States and attend an October 25, 2017 "presidential roundtable" event (the "October 25, 2017 Event") where the PRC National and an individual who worked for the PRC National, an individual whose identity is known to the Grand Jury (the "PRC National's Assistant") would meet and take photographs with the President of the United States and other politicians and business people. The agreement further provided that the PRC National would also attend an October 26, 2017 dinner hosted by a state campaign committee (the "State Committee") and the National Committee (the "October 26, 2017 Event"). The PRC National agreed to pay $210,000 for "expenses" to attend the events, which did not include the cost of food or lodging in the United States. LI, the PRC National and the PRC National's Assistant attended both events.

29. On or about October 26, 2017, the defendant SHERRY XUE LI sent a cashier's check to the National Committee in the amount of $105,400; the check was received by the National Committee on or about November 2, 2017. On or about October 26, 2017, LI sent a cashier's check to the State Committee in the amount of $10,000; the check was received by

the State Committee on or about October 30, 2017. Both checks were funded by international wire transfers from several Hong Kong companies.

30. To conceal the fact that the PRC National was the true source of the contributions, the defendant SHERRY XUE LI caused the contributions to the National Committee and the State Committee to be made in the name of one of her close family members, an individual whose identity is known to the Grand Jury.

31. In December 2017, after the PRC National and the PRC National's Assistant attended the October 25 and 26, 2017 Events, the PRC National's Assistant invested approximately $31,500 in the TEC Project.

COUNT ONE
(Conspiracy to Commit Wire Fraud)

32. The allegations contained in paragraphs one through 31 are realleged and incorporated as if fully set forth in this paragraph.

33. In or about and between 2013 and May 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SHERRY XUE LI, LIANBO WANG, also known as "Mike Wang," and GUO XUEFENG, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign

commerce, writings, signs, signals, pictures and sounds, to wit: electronic communications and monetary transfers, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNT TWO
(Wire Fraud)

34. The allegations contained in paragraphs one through 31 are realleged and incorporated as if fully set forth in this paragraph.

35. In or about and between 2013 and May 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SHERRY XUE LI, LIANBO WANG, also known as "Mike Wang," and GUO XUEFENG, together with others, did knowingly and intentionally devise a scheme and artifice to defraud by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: electronic communications and monetary transfers.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNT THREE
(Conspiracy to Commit Money Laundering)

36. The allegations contained in paragraphs one through 31 are realleged and incorporated as if fully set forth in this paragraph.

37. In or about and between 2013 and May 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SHERRY XUE LI and LIANBO WANG, also known as "Mike Wang," together with

others, did knowingly and intentionally conspire to: (a) conduct one or more financial transactions, to wit: transactions affecting interstate and foreign commerce and transactions involving the use of a financial institution that is engaged in, and the activities of which affect, interstate and foreign commerce, which transactions in fact involved the proceeds of one or more specified unlawful activities, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and with the intent to promote the carrying on of the specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i); and (b) conduct one or more financial transactions, to wit: transactions affecting interstate and foreign commerce and transactions involving the use of a financial institution that is engaged in, and the activities of which affect, interstate and foreign commerce, which transactions in fact involved the proceeds of one or more specified unlawful activities, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the specified unlawful activities, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

COUNTS FOUR THROUGH SEVEN
(Unlawful Monetary Transactions Over $10,000)

38. The allegations contained in paragraphs one through 31 are realleged and incorporated as if fully set forth in this paragraph.

39. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants SHERRY XUE LI and LIANBO WANG, also known as

"Mike Wang," together with others, did knowingly and intentionally engage in one or more monetary transactions, to wit: deposits, withdrawals, transfers and exchanges of funds and monetary instruments, in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property of a value greater than $10,000 and derived from one or more specified unlawful activities, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, as described below:

| COUNT | APPROX. DATE | TRANSACTION |
| --- | --- | --- |
| FOUR | October 25, 2017 | A wire transfer from East West Bank account ending in 4575 to a company providing air travel, in the amount of $27,226. |
| FIVE | October 27, 2017 | A check issued from East West Bank account ending in 4575 to the Town of Oyster Bay Tax Receiver, in the amount of $13,980.65. |
| SIX | October 15, 2018 | A check issued from East West Bank account ending in 4575 to the Town of Oyster Bay Tax Receiver, in the amount of $13,486.55. |
| SEVEN | January 9, 2019 | A wire transfer from New York Community Bank account ending in 5632 to M&T Bank, in the amount of $13,500. |

(Title 18, United States Code, Sections 1957(a), 1957(b), 2 and 3551 et seq.)

COUNT EIGHT
(Conspiracy to Defraud the United States)

40. The allegations contained in paragraphs one through 31 are realleged and incorporated as if fully set forth in this paragraph.

41. In or about and between June 2017 and November 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SHERRY XUE LI and LIANBO WANG, also known as "Mike Wang," together with others, did knowingly and willfully conspire to: (a) defraud the United States by impairing, obstructing and defeating the lawful functions of a department or agency of the United States, to wit: the FEC's function to administer federal law concerning source and amount restrictions in

federal elections, including the prohibitions applicable to straw donors and foreign nationals; (b) make contributions to candidates for federal office and joint fundraising committees in the names of other persons, aggregating to $25,000 or more in a calendar year, contrary to Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i); and (c) make contributions and donations of money, and an express or implied promise to make a contribution and donation, by a foreign national in connection with federal and state elections, aggregating to $25,000 and more in a calendar year, contrary to Title 52, United States Code, Sections 30121 and 30109(d)(1)(A)(i).

42. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants SHERRY XUE LI and LIANBO WANG, also known as "Mike Wang," together with others, committed and caused to be committed, among others, the following:

OVERT ACTS

(a) On or about June 20, 2017, LI sent a check in the amount of $270,500 issued from a personal checking account held in LI's name to the Joint Fundraising Committee.

(b) On or about June 20, 2017, WANG sent a check in the amount of $329,500 issued from a personal checking account held in WANG's name to the Joint Fundraising Committee.

(c) On or about October 26, 2017, LI sent a cashier's check to the National Committee in the amount of $105,400.

(d) On or about October 26, 2017, LI sent a cashier's check to the State Committee in the amount of $10,000, which check was received by the State Committee on or about October 30, 2017.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

COUNT NINE
(Tax Evasion)

43. The allegations contained in paragraphs one through 31 are realleged and incorporated as if fully set forth in this paragraph.

44. In or about and between January 2015 and April 2019, within the Eastern District of New York and elsewhere, the defendant SHERRY XUE LI did knowingly and willfully attempt to evade and defeat the payment of substantial income tax due and owing by her to the United States of America, for the calendar years 2016, 2017 and 2018, by, among other affirmative acts, (a) using nominee entities , to wit: CFS Asset Management, Fortune Source and CPA Express, and bank accounts held in the names of those entities, to conceal her receipt of income; (b) transferring and causing to be transferred funds from the EWB TBM Account to the nominee bank accounts; and (c) using funds deposited into the nominee bank accounts to pay personal expenses with unreported income.

(Title 26, United States Code, Section 7201; Title 18, United States Code, Sections 3551 et seq.)

COUNTS TEN THROUGH TWELVE
(Willful Failure to File Return)

45. The allegations contained in paragraphs one through 31 are realleged and incorporated as if fully set forth in this paragraph.

46. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant SHERRY XUE LI did knowingly and willfully fail to make and file with the IRS a Form 1040 for the calendar years set forth below, whereas, as LI well knew and believed, she had received gross income in excess of the minimum filing requirement and by reason of such gross income was required by law, on or before the dates set forth below, to make and file a Form 1040 with the IRS stating specifically the items of her gross income and any such deductions and credits to which she was entitled:

| COUNT | CALENDAR YEAR | FILING DATE |
| --- | --- | --- |
| TEN | 2016 | April 15, 2017 |
| ELEVEN | 2017 | April 15, 2018 |
| TWELVE | 2018 | April 15, 2019 |

(Title 26, United States Code, Section 7203; Title 18, United States Code, Sections 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS ONE AND TWO

47. The United States hereby gives notice to the defendants that, upon their convictions of either of the offenses charged in Counts One and Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of such offenses, including but not limited to: (a) the real property and premises known as 2 Centre View Drive, Oyster Bay, New York 11771, Parcel 24-026-4, titled to the defendant SHERRY XUE LI, and all proceeds traceable thereto; (b) the real property and

premises known as approximately 568 Acres, Wild Turnpike, Rock Hill, New York 12775, Parcel 26.-1-6, titled to Thompson Education Center, LLC, and all proceeds traceable thereto; (c) the real property and premises known as approximately 67 Acres of Vacant Land Wild Turnpike, Sullivan, New York, Parcel 26.-1-13, titled to Thompson Education Center, LLC, and all proceeds traceable thereto; (d) the real property and premises known as 34 Renner Road, Fallsburg, New York 48289, Parcel 65.-1-11.59, titled to Thompson Education Center, LLC, and all proceeds traceable thereto; and (e) miscellaneous firearms and accessories seized pursuant to court-authorized seizure warrants on or about July 18, 2022, owned by defendant LIANBO WANG, and all proceeds traceable thereto.

48. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been comingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS THREE THROUGH SEVEN

49. The United States hereby gives notice to the defendants charged in Counts Three through Seven that, upon their convictions of any of the offenses charged in those counts, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property, including but not limited to: (a) the real property and premises known as 2 Centre View Drive, Oyster Bay, New York 11771, Parcel 24-026-4, titled to the defendant SHERRY XUE LI, and all proceeds traceable thereto; (b) the real property and premises known as approximately 568 Acres, Wild Turnpike, Rock Hill, New York 12775, Parcel 26.-1-6, titled to Thompson Education Center, LLC, and all proceeds traceable thereto; (c) the real property and premises known as approximately 67 Acres of Vacant Land Wild Turnpike, Sullivan, New York, Parcel 26.-1-13, titled to Thompson Education Center, LLC, and all proceeds traceable thereto; (d) the real property and premises known as 34 Renner Road, Fallsburg, New York 48289, Parcel 65.-1-11.59, titled to Thompson Education Center, LLC, and all proceeds traceable thereto; and (e) miscellaneous firearms and accessories seized pursuant to court-authorized seizure warrants on or about July 18, 2022 and owned by defendant LIANBO WANG, and all proceeds traceable thereto.

50. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been comingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

Deighton Reid
FOREPERSON

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2017R00137
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

SHERRY XUE LI, LIANBO WANG, also known as "Mike Wang," and GUO XUEFENG,

Defendants.

# INDICTMENT

(T. 18, U.S.C., §§ 371, 981(a)(1)(C), 982(a)(1), 982(b)(1), 1343, 1349, 1956(h), 1957(a), 1957(b), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c); T. 26, U.S.C., §§ 7201 and 7206)

*A true bill.*

Deighton Reid
*Foreperson*

*Filed in open court this* __________________ *day,*

*of* ____________ *A.D. 20* _____

______________________________________ *Clerk*

*Bail, $* ___________

***Robert Polemeni, Assistant U.S. Attorney (718) 254-6044***